**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **DEAN PERRER AND**<br>**CYNTHIA PERRER** | **CIVIL ACTION NO:** |
| **Plaintiffs** | **SECTION:** |
| **VERSUS** | |
| | **JUDGE:** |
| **UNION CARBIDE CORPORATION,**<br> **et al.** | |
| | **MAGISTRATE JUDGE:** |
| **Defendants** | |

## NOTICE OF REMOVAL

**NOW INTO COURT,** through undersigned counsel, comes Defendant Huntington Ingalls Incorporated (f/k/a Northrop Grumman Ship Systems, Inc., f/k/a Avondale Industries, Inc.) (hereinafter "Avondale"), who, pursuant to 28 U.S.C. §§ 1441, 1442, and 1446, notices the removal of the above-entitled action bearing No. 2025-07320 on the docket of the Civil District Court for the Parish of Orleans, State of Louisiana (the "State Case"), to the United States District Court for the Eastern District of Louisiana. This Court has subject matter jurisdiction under 28 U.S.C. § 1441 in that the action arises "under the Constitution, laws or treaties of the United States" within the meaning of that statute, and because Avondale was, at all material times, acting under an officer of the United States as set forth in 28 U.S.C. § 1442(a)(1). The grounds for removal are as follows:

1.

Venue is proper in this Court because it is the district court for the district in which the State Case is pending. 28 U.S.C. § 1442(a).

1

2.

On July 28, 2025, Plaintiffs, Dean and Cynthia Perrer, filed a Petition for Damages naming multiple suppliers, premises, employers, and manufacturers and their insurers as defendants.[1] Avondale was not named a defendant. In the Petition, Plaintiffs allege that Dean Perrer was diagnosed with mesothelioma in June of 2025 as a result of occupational exposure to asbestos during his work as an electrical instrumentation worker for contractors at various locations in Louisiana and around the country from 1963 to 1964 and again from 1970 to the early 2000s.[2] Regarding exposure to asbestos, Plaintiffs allege that Mr. Perrer while working at various locations, he would "tear out, remove, and install various instrumentations containing asbestos."[3] Plaintiffs further allege that "While [Mr. Perrer] used, handled, and/or was in the vicinity of others using or handling asbestos and asbestos-containing products at the facilities, dangerously high levels of asbestos fibers escaped into ambient air of the workplace, resulting in Mr. Perrer breathing those fibers."[4] Plaintiffs alleged that all defendants failed "[t]o comply with the applicable state and federal regulations for exposure to asbestos, including … regulations promulgated by the Walsh-Healy [sic] Act and the Occupational Safety and Health Act."[5]

3.

On April 15, 2026, Plaintiffs filed a First Supplemental and Amended Petition for Damages (the "Amended Petition").[6] The Amended Petition added new defendants, including Avondale.[7] The Amended Petition alleged that Mr. Perrer worked at Avondale during the 1963-1964 and 1970

---

[1] Exhibit A: Petition for Damages, at ¶ 2.
[2] *Id.* at ¶¶ 6-7.
[3] *Id.* at ¶ 7.
[4] *Id.*
[5] *Id.* at ¶¶17(J), 18.
[6] Exhibit B: First Supplemental and Amended Petition for Damages with Service of Process Transmittal Summary.
[7] *Id.* at ¶ I.

to early 2000s time periods as a contractor performing electrical instrumentation work.[8] Otherwise, the Amended Petition adopted the allegations contained in the original Petition and asserted them against Avondale and the other newly added defendants.[9] Read together, the Petitions assert negligence and strict liability claims against Avondale,[10] and allege that Avondale had the obligation, but failed, to comply with the standards related to asbestos set forth specifically by the Walsh Healey Public Contracts Act ("Walsh Healey Act").[11]

4.

Before Avondale was named a defendant in the case, Mr. Perrer gave a deposition testifying that he worked at Avondale's Main Yard.[12] Mr. Perrer testified he worked at Avondale during two different time periods: from 1964 to 1965 and again from 1968 to 1976.[13] Mr. Perrer testified that he first worked as a sheet metal worker and, after a stint in the military, was as an electronics and instrumentation worker.[14] Mr. Perrer testified that he worked aboard Destroyer Escorts, Coast Guard Cutters, and Lykes cargo ships at Avondale employment.[15] Mr. Perrer testified to being around work in engine rooms of the vessels he worked aboard.[16] Specifically, he testified other trades were working in the engine rooms, including insulators, pipefitters, electricians, sheet metal workers, welders, and clean-up workers.[17] He testified that the

---

[8] *Id.* at ¶ II.
[9] *Id.* at ¶ III.
[10] Exhibit A at ¶¶ 17-25
[11] Exhibit A at ¶¶ 17(J), 18.
[12] Exhibit C: Deposition of Dean Perrer taken October 7, 2025, at p. 41.
[13] *Id.* at pp. 194, 204.
[14] *Id.* at pp. 24-25.
[15] *Id.* at pp. 26, 44-45, 50, 196, 204.
[16] *Id.* at p. 41.
[17] *Id.* at pp. 42, 47, 48.

environment was dusty during this work.[18] He testified that he worked in close proximity to insulators in the engine rooms as they applied insulation to piping, boilers, and turbines.[19]

5.

The Walsh Healey Act applies to U.S. government contracts with private entities exceeding $10,000.00 for the manufacturing or furnishing of goods. Through the Walsh Healey Act, the federal government issued advisories to government contractors, like Avondale, regarding asbestos and safety standards related to the levels of permissible asbestos exposure. The only federal contracts that Avondale had during Mr. Perrer's alleged exposure period, and thus the only contracts subjecting Avondale to the requirements of the Walsh Healey Act, were contracts between Avondale and the United States to build different types of Federal Vessels. The contracts Avondale had with the United States expressly incorporated the requirements of Walsh Healey at the time they were signed. In other words, Plaintiffs contend that, due to Avondale's failure to comply with the Walsh Healey Act, Mr. Perrer was exposed to asbestos which caused his mesothelioma.[20]

6.

During Mr. Perrer's alleged exposure period, Avondale constructed numerous vessels pursuant to contracts with the federal government. More specifically, Avondale constructed vessels pursuant to contracts with the United States Navy, United States Coast Guard, and United States Maritime Administration ("MARAD"). The government vessels included U.S. Navy Destroyer Escorts, Coast Guard Cutters and Lykes, States Lines, and LASH cargo vessels and LNG Carriers constructed for MARAD (collectively, the "Federal Vessels"). The Federal Vessels

---

[18] *Id.* at p. 48.
[19] *Id.* at pp. 49, 51-52; Exhibit D: Deposition of Dean Perrer taken October 8, 2025, at pp. 22-23, 31.
[20] Exhibit A, at ¶¶ 12; Exhibit B, at ¶¶ I-III.

were built with asbestos-containing materials pursuant to the Navy, Coast Guard, and MARAD's requirements. Thus, to the extent Mr. Perrer is alleging his exposure came from asbestos-containing materials installed on Navy, Coast Guard, and/or MARAD vessels at Avondale during the relevant years and related violations of the Walsh Healey Act, such exposure is necessarily attributable to asbestos-containing materials required and destined for use in the construction of the Federal Vessels. Thus, Plaintiffs' petitions and Mr. Perrer's deposition testimony reveal that Plaintiffs claim that Mr. Perrer's exposure to asbestos from Avondale is attributable, in part, to asbestos used and installed on Federal Vessels at Avondale, pursuant to Avondale's contracts with the federal government.

7.

This removal is being filed within thirty (30) days of service of the First Supplemental and Amended Petition for Damages on Avondale on May 11, 2026,[21] the initial pleading setting forth the claim against Avondale, and is therefore timely under 28 U.S.C. § 1446.

8.

This action involves persons acting under the authority of an officer of the United States within the meaning of 28 U.S.C. § 1442(a)(1). To establish jurisdiction under this statute, a defendant must show: (1) it has asserted a colorable federal defense, (2) it is a "person" within the meaning of the statute, (3) that has acted pursuant to a federal officer's directions, and (4) the charged conduct is related to an act pursuant to a federal officer's directions. *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 296 (5th Cir. 2020) (*en banc*).

---

[21] Exhibit B, at Service of Process Transmittal Summary.

9.

Avondale is a "person" within the meaning of 28 U.S.C. § 1442(a)(1). *E.g.*, *Savoie v. Huntington Ingalls Inc.,* 817 F.3d 457, 461 (5th Cir. 2016).

10.

Avondale was "acting under" an "officer . . . of the United States or [an] agency thereof" within the meaning of § 1442(a)(1) when it built the United States Navy and United States Coast Guard vessels because the federal government contracted with Avondale to perform a task that the government otherwise would itself have had to perform—namely, to build ships "used to help conduct a war" and to further other national interests.  *E.g.*, *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 153–54 (2007); *Savoie,* 817 F.3d at 461–62 (Avondale was acting under a federal officer in the construction of vessels for the United States Navy); *Cortez v. Lamorak Ins. Co.,* No. CV 20-2389, 2020 WL 6867250, at *5 (E.D. La. Nov. 23, 2020) (Avondale was acting under a federal officer in the construction of vessels for the United States Coast Guard).

11.

Avondale was also "acting under" a federal officer within the meaning of § 1442(a)(1) when it built the Lykes, States Lines, and LASH cargo vessels and LNG carriers pursuant to contracts with MARAD, because the United States government, acting through MARAD, had contracted with Avondale to perform a task that the government otherwise would itself have had to perform – to build ships for use as naval and military auxiliaries, to promote foreign and domestic commerce, and to further other important national interests. *Wilde v. Huntington Ingalls, Inc.*, 616 F. App'x 710, 713 (5th Cir. 2015) (Avondale was acting under a federal officer in the construction of vessels for the United States Maritime Administration); *Dempster v. Lamorak Ins. Co.*, No. CV 20-95, 2020 WL 468611, at *11 (E.D. La. Jan. 28, 2020) (same).

6

12.

If Mr. Perrer was exposed to asbestos from work undertaken in conjunction with the construction of the Federal Vessels, the use of asbestos-containing materials on those vessels was required, controlled, and/or authorized by officers of the United States.

13.

Plaintiffs' claims against Avondale, which include both negligence and strict liability claims, are claims "for or related to" acts performed under color of federal office within the meaning of the text of 28 U.S.C. § 1442(a)(1) because the charged conduct is "connected or associated with" an act under a federal officer's direction. *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d at 296; *see also Chevron USA Inc. v. Plaquemines Parish, Louisiana*, 608 U.S. ---, 146 S. Ct. 1052, 1060-61, 2026 WL 1040461, at *6 (Apr. 17, 2026) (holding that while "a removing defendant need not show that his federal duties specifically required or strictly caused the challenged conduct," but that a removing defendant meets the requirement by having "plausibly alleged a close relationship between its challenged conduct and the performance of its federal duties").

14.

The use and installation of asbestos-containing materials in the construction of the Federal Vessels was required by the contractual provisions and design specifications mandated by the federal government acting through the United States Navy, United States Coast Guard, and MARAD.

15.

The materials used in the construction of the Federal Vessels—including asbestos-containing materials—were the kind, type, and brand of materials specifically mandated by the

Vessel Construction Contracts between Avondale and the United States government, and by the incorporated drawings, plans and specifications for the construction of the Federal Vessels.

16.

The shipbuilding process—specifically including the use and installation of asbestos-containing materials aboard the Federal Vessels—was supervised and monitored by inspectors and other representatives of the United States government to ensure that Avondale complied with the design specifications mandated by the Navy, Coast Guard, and MARAD.

17.

The inspections by representatives of the United States government included a determination that the supplies (including raw materials, components, and end products) used in the construction of the Federal Vessels were the supplies required by the contracts and specifications, including asbestos-containing thermal insulation and other asbestos-containing materials, as well as non-asbestos insulation materials. Inspections occurred throughout construction and prior to final acceptance of the Federal Vessels. If Avondale did not use the supplies required by the contracts, including asbestos-containing materials, the federal government could demand that Avondale replace the supplies with conforming materials and/or put Avondale in default of the contract.

18.

The United States government required Avondale to provide representatives of the United States government, including government inspectors, with office space and other attendant facilities within the shipyard.

19.

Extensive Dock Trials, Builder's Trials, and Sea Trials on the Federal Vessels were performed by representatives of the United Sates government prior to the delivery of each Federal Vessel to ensure conformity with the design specifications mandated by the United States government.

20.

The United States government also promulgated specific safety rules, regulations, and requirements for shipbuilding. These regulations included specific permissible safe exposure levels for asbestos pursuant to the Walsh Healey Public Contracts Act and the U.S. Department of Labor Safety and Health Regulations for Shipbuilding, 29 C.F.R. § 1502.1, which set safety standards to meet the provisions of the Longshore and Harbor Workers' Compensation Act requirements to render Avondale's workplace safe pursuant to 33 U.S.C. § 941. Avondale was guided by and required to comply with these safety regulations during the Federal Vessels' construction. United States government safety inspectors specifically monitored and enforced these safety regulations as well as the construction of the Federal Vessels on a day-to-day and job-specific basis.

21.

Avondale raises two colorable federal defenses to one or more of the Plaintiffs' claims in this action.[22] First, one or more of Plaintiffs' claims are barred under the jurisprudential doctrine of government contractor immunity established by *Boyle v. United Techs. Corp.,* 487 U.S. 500

---

[22] In an abundance of caution, and to the extent there is no conflict with *Barrosse v. Huntington Ingalls Incorporated,* 70 F.4th 315 (5th Cir. 2013), *cert. denied,* 144 S. Ct. 557, 217 L.Ed.2d 296 (2024), Avondale also asserts that one of more of Plaintiffs' claims are preempted and barred by the exclusive remedy provisions of the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901, *et seq. See, e.g., Ingalls Shipbuilding Corp., Div. of Litton Sys. v. Morgan,* 551 F.2d 61, 62 (5th Cir. 1977).

(1988), and its progeny. *See Latiolais,* 951 F.3d at 297-98 (holding Avondale's *Boyle* defense is colorable). Furthermore, Plaintiffs' negligence and strict liability claims relate to the acts performed under color of federal office.

22.

The reasonably precise design specifications established by the Navy, Coast Guard, and MARAD mandated the installation of asbestos and asbestos-containing products on the Federal Vessels. The Federal Vessels conformed to the specifications mandated by the Navy, Coast Guard, and MARAD—the specifications mandated the use of asbestos, and Avondale built the Federal Vessels using asbestos. The United States government had knowledge of the potential hazards of asbestos-containing materials in the workplace that was equal to or superior to that of Avondale.

23.

Second, Plaintiffs' claims against Avondale are barred by the federal defense of derivative sovereign immunity as set forth in *Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18 (1940), and its progeny. *Yearsley* established that a federal government contractor, performing at the direction and authorization of a federal government officer, is immune from suit based upon performance of the contract. The *Yearsley* doctrine applies here, rendering Avondale immune from suit, because Avondale performed the at-issue acts at the direction of federal government officers acting pursuant to federal government authorization.

24.

Removal under 28 U.S.C. § 1442 does not require the consent of any defendant. *See Humphries v. Elliott Co*., 760 F.3d 414, 417 (5th Cir. 2014); *Ely Valley Mines, Inc. v. Hartford Acc. & Indem. Co.,* 644 F.2d 1310 (9th Cir. 1981); *Bottos v. Avakian,* 477 F. Supp. 610 (N.D. Ind. 1979), *aff'd*, 723 F.2d 913 (7th Cir. 1983).

25.

Because this Court has federal officer jurisdiction over at least one claim asserted by Plaintiffs, it has supplemental jurisdiction over the entire action. 28 U.S.C. § 1367(a); s*ee also Savoie,* 817 F.3d at 463.

26.

Contemporaneously with the filing of this Notice of Removal, pursuant to 28 U.S.C. § 1446(d), Avondale will promptly give written notice to all adverse parties and will file a copy of this Notice with the Clerk of the Civil District Court for the Parish of Orleans, State of Louisiana.

27.

Finally, in accordance with the Court's standard procedure, and on or before the deadline to be set by this Honorable Court, Avondale will file a "copy of all process, pleadings, and orders served" in the State Case. 28 U.S.C. §§ 1446(a) and (d).

**ACCORDINGLY,** Avondale hereby gives notice that the proceeding bearing Case No. 2025-07320 on the docket of the Civil District Court for the Parish of Orleans, State of Louisiana, is removed to the docket of this Court for trial and determination as provided by law, and asks that this Court enter such orders and issue such process as may be proper to bring before it copies of all records and proceedings in the State Case, and to proceed with this civil action as a matter properly removed.

**[Signature block on following page.]**

11

Respectfully submitted,

**BLUE WILLIAMS, LLC**

**/s/ *Erin H. Boyd***

BRIAN C. BOSSIER (#16818)
EDWIN A. ELLINGHAUSEN, III (#1347)
CHRISTOPHER T. GRACE, III (#26901)
ERIN H. BOYD (#20121)
LAURA M. GILLEN (#35142)
KIMMIER L. PAUL (#35278)
MORGAN M. SMITH (#40952)
3421 N. Causeway Blvd., Suite 900
Metairie, LA  70002
Telephone: (504) 831-4091
Facsimile: (504) 837-1182
Email: eboyd@bluewilliams.com
avondaleasbestos@bluewilliams.com
***Counsel for Huntington Ingalls Incorporated***

12